In re:
DOUGLAS F. VAUGHAN,
      Debtor.                                    No. 11-10-10763 SA

**MEMORANDUM OPINION IN SUPPORT OF
ORDER APPROVING IN PART APPLICATION OF DEBTOR IN POSSESSION
FOR EMPLOYMENT OF GORENCE & OLIVEROS, P.C.
<u>AND OF SAUL EWING, LLP AS SPECIAL COUNSEL</u>**

Debtor's Application to Employ and Compensate Robert Gorence and Gorence & Oliveros, PC as Special Counsel (doc 24) and Debtor's Application to Employ and Compensate Charles N. Curlett, Jr. and Saul Ewing, LLP as Special Counsel (doc 25), together with the objections to both those applications, came before the Court for a final hearing on April 21, 2010. The Court heard presentations from self represented movant Douglas F. Vaughan the Debtor in Possession and from objecting parties the United States Trustee Office (Ronald E. Andazola), the Official Committee of Noteholders (George M. Moore), BBVA Compass Bank (Samuel I. Roybal), Bank of Oklahoma (Michelle K. Ostrye) and the Official Committee of Noteholders in the companion case of The Vaughan Company, Realtors No. 10-10759 (William F. Davis).[1] The Court also heard from Christopher Bauman, representing Bob Turner whose

---

[1] Over a dozen self represented creditors who are noteholders filed objections to these employment applications. The Court had reviewed all the objections and discussed them at the preliminary hearing that the Court conducted on these applications on April 5, 2010 (minutes – doc 175). The Court finds that the objections raised by the parties that appeared at the final hearing sufficiently represent the objections raised by the noteholders, almost none of whom appeared at either hearing.

$200,000 check provided the funding for the prepetition representation of Mr. Vaughan and the remains of which, approximately $162,000, were proposed by Debtor to fund Special Counsel for postpetition work.[2] In addition, Mr. Gorence attended the hearing for himself and his firm ("Gorence"), as did Mr. Curlett (by telephone) for himself and his firm ("Curlett"). The Court has also reviewed the papers filed by Debtor and all objecting parties, as well as the docket and selected papers and orders from Securities and Exchange Commission v. Vaughan et al., Civ. No. 10-00263 MCA/WPL, United States District Court for the District of New Mexico ("SEC Case"). The Court finds good cause to grant the Applications, but, given the developments described below, only for the purpose of allowing the applicants to conclude their representations and file fee applications, if they wish to do so.[3]

Debtor sought to employ both counsel to represent him and the estate in connection with the investigations being conducted by the SEC and the New Mexico Securities Division and to defend

---

[2] The Court makes no decision in this opinion on whether the remains of the $200,000 check constitute property of the estate. Both Special Counsel made clear that they have no intention of doing anything with those funds other than holding them until a further order of this Court.

[3] The practice in this District is to permit counsel and other professionals to begin representation of the estate upon the filing of an employment application, with the understanding that if the employment is subsequently not permitted by the Court, no compensation will be permitted.

against the SEC Case.  The applications were filed pursuant to section 327(e), which provides as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

By the time of the preliminary hearing Curlett, with the approval of the Debtor, no longer sought to be employed for any further work, but only to be able to file a fee application for the work done on the petition date and for a short period thereafter.  Debtor's Reply to Objections to Debtor's Application to Employ and Compensate Charles N. Curlett, Jr. and Saul Ewing, LLP as Special Counsel and Debtor's Application to Employ and Compensate Robert Gorence and Gorence and Oliveros, PC as Special Counsel (doc 136), at 2.[4]  Similarly, Gorence has now moved in

---

[4] The Court notes that both applications were filed on March 2, 2010, slightly over a week after the date of the filing of the petition on February 22, 2010.  The standard rule, long established in the case law, is that postpetition employment by the estate can be retroactively permitted, but only as far back as the date of the filing of the employment application.  See Land v. First Nat'l Bank of Alamosa (In re Land), 943 F.2d 1265, 1267-68 (10th Cir. 1991)("[N]unc pro tunc approval is only appropriate in the most extraordinary circumstances."); In re Potter, 377 B.R. 305, 308 (Bankr. D. N.M. 2007)("It is not inappropriate to approve the employment effective as of the date of the filing of the Application to Employ.  See In re Bartmann, 320 B.R. 725, 735 n. 8 (Bankr. N.D. Okla. 2004) (noting that, '[g]enerally, approval of employment of professionals is granted as of the date the application was filed, rather than the date
(continued...)

Case 10-10763-j7    Doc 259    Filed 04/28/10    Entered 04/28/10 15:53:46 Page 3 of 13

the SEC Case to withdraw from the representation of Mr. Vaughan. Motion for Leave to Withdraw as Counsel (doc 21) and Amended Motion for Leave to Withdraw as Counsel (doc 22), both filed April 22, 2010.[5]

Many of the objections recite that there cannot be any benefit to the estate from these employments, and therefore there is no point in approving them. The United States Trustee argues that the duties proposed for the special counsel duplicate or consist of that the primary counsel for the chapter 11 debtor should do, and therefore special counsel should be subject to the stricter requirements of section 327(a) with its disinterestedness requirement, or should not be employed at all. Bank of Oklahoma further argues that there is a per se rule against the employments, citing In re Tashof, 33 B.R. 225 (Bankr. D. Md. 1983).

---

[4](...continued)
the professional first rendered services to the debtor ...')"); In re Melton, 353 B.R. 901, 906 (Bankr. D. Idaho 2006)(Approving employment of debtor's attorney from date application was filed, not from petition date.) In consequence, there may well be even less incentive for special counsel to bother with filing fee applications, thereby mooting the brouhaha occasioned by the filing of these applications.

[5] The reasons given were that Mr. Vaughan currently could not afford to compensate Gorence and that there was a "high improbability" of being compensated from the estate. Debtor probably should have filed some sort of amendment to the Gorence application to provide formal notice in the bankruptcy case of the changed circumstances, but the Court can make this ruling without that.

Taking the United States Trustee's particular objection first, the Court notes that dealing with an SEC inquiry, even if it does involve potentially making assets available to the estate, is certainly not within the routine purview of chapter 11 debtor in possession representations, at least in this district.[6] Thus that argument must be overruled. In re French, 139 B.R. 485, 489 (Bankr. D. S.D. 1992) ("In this case, providing a criminal defense is, in fact, for a purpose other than 'to represent the trustee in conducting the case'; therefore, the first requirement of section 327(e) is met.").

On the more general question of benefit to the estate, raised by a majority of objectors, whether a professional's services benefit the bankruptcy estate is the threshold inquiry that must be made before a consideration of the reasonableness of the services. Rubner & Kutner v. U.S. Trustee (In re Lederman Enterprises, Inc.), 997 F.2d 1321, 1323 (10th Cir. 1993). Thus ordinarily services rendered to the debtor for his personal benefit will not benefit the estate, and so would not be compensable from the estate. Lewis v. Fitzgerald, 295 F.2d 877, 878-79 (10th Cir. 1961), cert. denied 369 U.S. 828 (1962) (decided under prior law):

---

[6] The Court makes this observation notwithstanding the work of counsel for the debtor in possession in the companion case of In re The Vaughan Company, Realtors, Inc., No. 10-10759, who negotiated with the United States Security and Exchange Commission to free up assets for that estate.

> Under plain terms of the statute only one attorney's fee may be allowed as compensation for services rendered to the bankrupt. And it is to compensate for professional services rendered in connection with the preservation of the estate. The granting or denial of a discharge is personal to the bankrupt. It has nothing to do with the preservation of the estate. And therefore professional services of an attorney in representing the bankrupt in resisting objections to the granting of a discharge are not services which are compensable out the bankrupt estate.

(Citation omitted.) Accord, In re Epstein, 39 B.R. 938 (Bankr. D. N.M. 1984).

The critical factor in making the decision on compensation therefore is benefit to the estate, so that if it is clear from the outset that practically speaking there can be no benefit to the estate, the Court ought not to permit the employment. On the other hand, if it is possible that special counsel might benefit (or might have benefitted) the estate, it should not rule out the employment but rather allow special counsel to perform the services and then apply for compensation, with the decision on compensation made at the time of the fee application rather than earlier on at the employment stage. This is what the bankruptcy court did in Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567 (3rd Cir. 1997), a decision upheld by a (divided) Third Circuit panel.[7]

---

[7] The divisive issues among the panel were whether the law firm applying for compensation, a criminal defense firm hired by the debtor to obtain his release from prison, had adequate warning that it might not get paid, and whether the employment
(continued...)

The facts in Tashof certainly bear a close resemblance to the facts of this case. In that case, as here, the debtor in possession applied to retain a securities law firm as special counsel to represent the debtor in connection with an SEC investigation. The court ruled that the estate had no interest per se in whether debtor faced criminal charges, that special counsel would result only in extra expense and in any event no benefit for the estate, and there was nothing special counsel could do to help administer the estate. Therefore the court was compelled to deny the employment application. The Tashof court's ruling is instructive about that court's thinking and the facts of that case:

> [I]n this case Mr. Tashof and not the estate is being protected in the SEC proceeding. In this liquidating plan, the estate per se has no interest in whether or not Mr. Tashof faces criminal charges. Whether the SEC prosecutes Mr. Tashof or whether he may engage in further activities in the securities industry could not matter less to the unsecured creditors. The only thing that the employment of special counsel could produce for the unsecured creditors is additional expense. Debtors' counsel urges that employment of SEC counsel is necessary in order to take the debtor's mind off the threatened prosecution and to permit him to devote all of his energies to turning the property around and producing a return for the investors. This same argument could be made if the debtor were charged with arson. In considering all the equities, the court does not find that the best interests of the estate would be served by burdening it with the expense of special counsel. Nor, can the court discern, on the status of

---

⁷(...continued)
order by its terms implied at least some payment. Neither of these issues arises in the current circumstances of this case.

> the record at this time, any duties of the
> debtor-in-possession that would be assisted by the
> employment of special counsel.  Therefore, the court
> does not see the fairness in affording administrative
> priority to the future charges of special counsel hired
> to assist Mr. Tashof in his role as the target of an
> SEC investigation.

33 B.R. at 228-29.  Other cases take a similar if not exactly identical approach to the question: <u>In re Duque</u>, 48 B.R. 965 (S.D. Fla. 1984) (reversing bankruptcy court decision to permit criminal defense counsel to be paid from the estate); <u>Official Committee of Disputed Litigation Creditors v. McDonald Investments, Inc.</u>, 42 B.R. 981 (N.D. Tex. 1984) (same, and also forbidding use of estate funds for bail for debtor); <u>In re United Church of the Ministers of God</u>, 84 B.R. 50 (Bankr. E.D. Penn. 1988) (debtor not permitted use of estate funds in connection with federal investigation and potential defense of criminal charges arising out of prebankruptcy activities); <u>In re French</u>, 139 B.R. 485 (same).

In this case, on the other hand, the Court cannot categorically rule out the possibility that there might have been some benefit to the estate.  <u>See</u> <u>Duque</u>, 48 B.R. at 975 ("[T]his Court cannot say there may never arise circumstances in which special criminal counsel may be necessary....").  For example, counsel for the Debtor in Possession in the companion case of <u>In re The Vaughan Company, Realtors, Inc.</u>, No. 10-10759, negotiated with the United States Security and Exchange Commission to obtain

Page 8 of  13

Case 10-10763-j7    Doc 259    Filed 04/28/10    Entered 04/28/10 15:53:46 Page 8 of 13

a freeing up of three checking accounts for the company.  See SEC Case, Order for Preliminary Injunction, Asset Freeze, and Other Equitable Relief, filed April 15, 2010, decretal paragraph VI(A), at 7.[8]  Doc 19.  So while it appears likely that there has been no benefit to the Douglas F. Vaughan estate, the Court does not have a sufficient evidentiary predicate to make that decision at this time.  This factor is a crucial difference from the Tashof situation, where apparently the court was able to say categorically there could be and would be no benefit to the estate.  And in any event, per se rules in decisions such as these unnecessarily restrict a court from considering the many varying circumstances which may require a more flexible approach.  The Court therefore should not preclude Gorence or Curlett from at least attempting to demonstrate benefit to the estate.[9]

Consistent with the Engel case, the Court cautions special counsel that it is entirely possible, if not likely, that no

---

[8] "[T]he asset freeze described in this paragraph does not apply to the following Debtor in Possession accounts opened by [The Vaughan Company, Realtors, Inc.] at Bank First following the filing of its Chapter 11 bankruptcy petition in February 2010 using funds not derived from investor proceeds raised in the scheme alleged in the Complaint: Accounts ... (operating), ... (payroll) and ... (tax)."

[9] In the course of the hearing Bank of Oklahoma insisted on an evidentiary hearing on the issue of what assets that had been frozen that might be available for the estate.  The Court denied that request; the time to examine that issue will be if, and only if, a fee application is filed.  At that time the parties can focus specifically on what assets or other benefits special counsel may have obtained for the estate.

compensation will be awarded.[10] Should counsel decide to file a fee application, they must comply with the fee application requirements of the United States Trustee's office. And should the Court award compensation, it will at that time determine the hourly rate at which special counsel are allowed to bill the estate.

For the foregoing reasons, the Court will enter an order granting the applications to act as special counsel, effective as of the date of the filing of the applications on March 2, 2010, in order to permit them to file fee applications for postpetition services if they wish to do so.

/s/ James S. Starzynski

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: April 28, 2010

---

[10] Of course, this warning is coming after both special counsel have already stated that they will be withdrawing from the representation.

Copies to:

Douglas F Vaughan
PO Box 70009
Albuquerque, NM 87197

Charles N. Curlett, Jr.
500 East Pratt Street
Baltimore, MD 21202-3133

Robert Gorence
201 12th Street NW
Albuquerque, NM 87102

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Susan Vandiver
PO Box 36112
Albuquerque, NM 87176

George M Moore
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Chris W Pierce
Hunt & Davis, P.C.
P.O. Box 30088
Albuquerque, NM 87190-0088

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Gail Gottlieb
Sutin, Thayer & Browne
PO Box 1945
Albuquerque, NM 87103-1945

Michelle Ostrye
PO Box 1945
Albuquerque, NM 87103-1945

William L Lutz
PO Drawer 1837
Las Cruces, NM 88004-1837

Robert Greathead Sloan
Robert G. Sloan, PC
1300 Central Ave SW
Albuquerque, NM 87102-2805

Erika Poindexter
707 Broadway Blvd NE Ste 202
Albuquerque, NM 87102-4207

J Kerwin Hollowwa
PO Box 1307
Albuquerque, NM 87103-1307

Erik B Thunberg
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

Allen Richard Smith
Smith & Payne, P.C.
PO Box 2100
Los Lunas, NM 87031

Walter L Reardon, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

Jennie D Behles
PO Box 7070
Albuquerque, NM 87194-7070

Ross B Perkal
708 Marquette NW
Albuquerque, NM 87102-2035

F Vaughn Thomas
PO Box 21580
Albuquerque, NM 87154-1580

Deron B Knoner
PO Box AA
Albuquerque, NM 87103

W. Spencer Reid
PO Box AA
Albuquerque, NM 87103

John A Bannerman
2201 San Pedro NE Bldg #2 Ste 207
Albuquerque, NM 87110-4129

William R Brummett
113 6th St NW Ste E
Albuquerque, NM 87102-3103

Robert J Muehlenweg
Rammelkamp, Muehlenweg & Cordova, P.A.
316 Osuna Rd NE Unit 201
Albuquerque, NM 87107

Michael Wile
Michael Wile PC
2001 Mountain Rd NW
Albuquerque, NM 87104-1948

Douglas A Baker
Atkinson, Thal & Baker PC
201 Third St NW, Ste 1850
Albuquerque, NM 87102

Jenica L. Jacobi
PO Box 15698
Rio Rancho, NM 87174

Christopher M Pacheco
Lastrapes, Spangler & Pacheco, PA
PO Box 15698
Rio Rancho, NM 87174-0698

Christopher P. Bauman
Bauman, Dow & Leon, PC
PO Box 30684
Albuquerque, NM 87190-0684

Stephen CM Long
8316 Washington St., N.E.
Albuquerque, NM 87113

Gary B Ottinger
PO Box 1782
Albuquerque, NM 87103-1782

Stephen Moffat
908 Fruit St. NW
Albuquerque, NM 87102

Philip H. Dugan
Philip H. Dugan Living Trust
123 Calle Olas Altos NE
Albuquerque, NM 87109

Michael D. Menke
PO Box 968
Sandia Park, NM 87047

Shirley McCormack
2708 Bosque del Rio Ln NW
Albuquerque, NM 87120

Jerry Theiler
Chris Theiler
11301 Oakland Ave. NE
Albuquerque, NM 87122

Steven R. Pazand
2719 Indian Farm Ln NW
Albuquerque, NM 87107

Jane Halpern
2160 Ryan Place NW
Albuquerque, NM 87107

Les Spector
77 Pancoast Blvd
Delran, NJ 08075

Richard Gnekow
Luella Gnekow
4404 Bryan NW
Albuquerque, NM 87114

```
D.C. Durano
Durano Enterprises
PO Box 90625
Albuquerque, NM 87199

John McCormack
Debbie McCormack
5916 Legends Ave. NW
Albuquerque, NM 87121

Glenda L. Durano, Trustee
Glenda L. Durano Revocable
Living Trust
PO Box 90625
Albuquerque, NM 87199

Thomas J. McNaughton
3104 Camelback Rd. #255
Phoenix, AZ 85016

Janice B. Dorn
3104 Camelback Rd. #255
Phoenix, AZ 85016
```